**GOVERNMENT OF the
VIRGIN ISLANDS**

v.

**DUBERRY, Leslie.**

**Appeal of Leslie DUBERRY.**

**Nos. 90–3398, 90–3399.**

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule 12(6)
Dec. 6, 1990.

Decided Jan. 22, 1991.

Terry M. Halpern, U.S. Atty., David L. Atkinson, Asst. U.S. Atty., Christiansted, Saint Croix, Virgin Islands, for appellee.

Before HIGGINBOTHAM, Chief Judge, and GREENBERG and COWEN, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

An information was filed on November 27, 1989, in the District Court of the Virgin Islands charging appellant Leslie Duberry and Larry Lockhart with kidnapping with intent to commit robbery, kidnapping, first degree robbery, assault in the first degree, grand larceny, and unlawful use of a motor vehicle, V.I.Code Ann. tit. 14, §§ 11, 1052, 1051, 1862, 295, 1083, and 1382 (1964 & Supp.1989). The victim of the crimes which were committed by Duberry and one other person on September 19, 1989, on the University of the Virgin Islands campus following Hurricane Hugo was Ramkisoon Goonie, a 69–year old security guard. Goonie was attacked from behind, robbed, bound and gagged, taken to his own car and stuffed in the trunk. While Duberry was driving away, he was recognized by several police officers as an escaped inmate who had been able to flee from the Golden Grove penitentiary because of damage from the storm. A pursuit followed and, though Duberry escaped, he abandoned the car and Goonie was freed from the trunk. Duberry was arrested several days later. Lockhart was alleged to have been with Duberry when the offenses were committed, but he was ultimately acquitted.

Duberry and Lockhart were arraigned on December 7, 1989, and pleaded not guilty. The trial was scheduled for January 20 or 22, 1990, but on January 18, 1990, Duberry filed a motion for a continuance.[1] On January 19, 1990, Duberry's motion was granted and a trial date for both defendants of February 5, 1990, was fixed. A magistrate with the defendants' consent selected the

Thurston T. McKelvin, Federal Public Defender, Melody M. Walcott, Asst. Federal Public Defender, Christiansted, Saint Croix, Virgin Islands, for appellant.

---

1. In Duberry's brief in support of a motion to dismiss the information for a Speedy Trial Act violation he asserted that the trial date was scheduled for January 20, 1990, app. at 449, but in the government's brief on this appeal it indicates that the trial date was January 22, 1990. Brief at 1. We cannot ascertain from the district court docket sheets which date is correct, but we need not resolve the discrepancy to decide this appeal.

jury on that day and the trial was continued until February 16, 1990.

On February 16, 1990, the defendants were not available for trial until Lockhart was brought to the courthouse at about 11:00 a.m.[2] The trial judge that day, Judge Edward N. Cahn of the Eastern District of Pennsylvania, sitting by designation, was scheduled to leave the Virgin Islands the next day.[3] Judge Cahn understandably was concerned about whether the trial could be completed while he was still available but offered to start the trial if the defendants would agree to waive a double jeopardy claim should it be aborted and a mistrial declared but neither would. In the circumstances, Judge Cahn indicated that he would grant "a continuance in the interest of justice." On March 6, 1990, Judge Cahn signed an order under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(8)(A):

> that trial must be continued due to the probable unavailability of the Court to try the case to verdict, which could cause the continuation of the case to be impossible, result in the distinct possibility that a re-trial of the case could be barred under Fifth Amendment principles, and result in a miscarriage of justice, all as contemplated by 18 U.S.C. [§] 3161(h)(8)(B)(i); and,
>
> The Court further finds that the ends of justice served by postponing this case until it can be tried to completion outweigh the best interest of the public and defendant in a speedier trial; therefore,
>
> It is hereby ordered that trial in the above-captioned case be postponed until a date to be set by the Court when it can be tried to completion; and
>
> It is further ordered that the delay occasioned hereby shall be excludable for purposes of the Speedy Trial Act analysis (18 U.S.C. [§] 3161).

App. at 445–46.[4]

The trial was rescheduled for March 21, 1990, with Judge Daniel H. Huyett III of the Eastern District of Pennsylvania sitting by designation. On that day, however, three of the 14 jurors earlier selected were either unavailable or unable to serve so that only 11 jurors could hear the case. Accordingly, as the parties did not reach an agreement for a trial before an 11–person jury, the trial was continued until March 26, 1990, when a jury was selected.[5] On March 28, 1990, Duberry filed a motion to dismiss the information pursuant to the Speedy Trial Act, and on March 29, 1990, Lockhart joined in the motion which, following argument, was denied that day by Judge Robert J. Kelleher of the Central District of California, sitting by designation. The evidentiary portion of the trial was started on March 29, 1990, and was completed on April 2, 1990, when Duberry was convicted on all counts and Lockhart was acquitted. Duberry was sentenced to a general sentence of life imprisonment on the two kidnapping counts and to a general sentence of 15 years, consecutive to the life sentence, on the remaining counts, as re-

---

**2.** The record is not entirely clear on this point. According to Duberry it was Lockhart who was not available until 11:00 a.m. Brief at 2. The United States Attorney indicates, however, that "either Appellant or his co-defendant, or both were brought to court several hours late by Territorial Correction officers." Brief at 1. The record seems to support Duberry's contention as the district court denied his motion to dismiss the information for an asserted Speedy Trial Act violation in part because Lockhart was not available, apparently because he was brought to court late. We have no need to review this ruling.

**3.** This case was heard by visiting district judges as there are vacancies in both authorized Virgin Islands district judgeships.

**4.** Duberry suggests that the actual reason for the continuance was "general congestion of the court's trial calendar," brief at 11, which would not result in excludable time. 18 U.S.C. § 3161(h)(8)(C). There is no factual basis for this contention as Judge Cahn's designation to the District of the Virgin Islands was temporary and thus his departure cannot reasonably be attributed to "the press of [his] other business." *United States v. Andrews,* 790 F.2d 803, 808 (10th Cir.1986).

**5.** The record is not clear as to whether a complete new jury was chosen or whether only new jurors to substitute for those no longer available or able to serve were selected. Our result, however, is not dependent on this distinction.

flected in an amended judgment entered on June 13, 1990.[6] This appeal followed.

■ Duberry contends first that there was a Speedy Trial Act violation and that Judge Cahn could not properly invoke the "ends of justice" provisions of 18 U.S.C. § 3161(h)(8)(A) to grant a continuance at trial. His calculations of trial delay are as follows. He was arraigned on December 7, 1989, but on January 18, 1990,[7] moved for a continuance. He concedes that there should be an exclusion of the time from the day he filed his motion for the continuance, January 18, 1990, until February 5, 1990, when the jury was selected, and then another exclusion from then until February 16, 1990, the date to which the trial was continued after February 5, 1990. He urges, however, that the clock started running again on February 16 and ran until March 21, 1990. Accordingly, he calculates that there were 75 non-excludable days from arraignment to the commencement of the trial. Thus, he urges that the district court erred in denying his motion for a dismissal predicated on a violation of the Speedy Trial Act. He does not contend that the period after March 21, 1990, should be treated as non-excludable.[8]

■ We reject Duberry's speedy trial argument. The Speedy Trial Act provides that if a plea of not guilty is entered, the trial of a defendant charged in an information or indictment "shall commence" within 70 days from the filing date and the making public of the information or indictment or from the date the defendant has ap-

peared before a judicial officer of the court in which the charge is pending, whichever date is last. 18 U.S.C. § 3161(c)(1). While the statute does not define "commence," other courts of appeals have held that for Speedy Trial Act calculations, a trial commences when *voir dire* begins and we will follow that rule. Therefore the trial in this case commenced on February 5, 1990. *United States v. Fox*, 788 F.2d 905, 908 (2d Cir.1986); *United States v. Crane*, 776 F.2d 600, 603 (6th Cir.1985); *United States v. Martinez*, 749 F.2d 601, 604 (10th Cir. 1984); *United States v. Gonzalez*, 671 F.2d 441 (11th Cir.), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982).

■ The Speedy Trial Act does not require that once a trial commences it continue without interruption and it is therefore recognized that the Act is not violated if the jury is selected within the 70-day period but a short recess places its swearing outside the statutory period. *Fox*, 788 F.2d at 908; *Crane*, 776 F.2d at 603. However, if a district court attempts to evade the spirit of the Act by conducting *voir dire* within the 70-day period and then ordering a prolonged recess it may violate the Act. *United States v. Scaife*, 749 F.2d 338, 343 (6th Cir.1984). In *United States v. Gonzalez*, the trial court conducted *voir dire* on the last day of the 70-day period and continued the trial for eleven days. The court of appeals held that the Act had not been violated as the trial court had offered to continue the trial until the Monday following *voir dire*, though the parties asked for and obtained a longer delay to avoid inter-

6. Duberry was sentenced by Judge Robert R. Merhige, Jr., of the Eastern District of Virginia, who was thus the fourth district judge who sat on this case. *See* Fed.R.Crim.P. 25(b)

7. In his brief, Duberry indicates that he moved for a continuance on January 19, 1990. In fact, the motion was filed on January 18, 1990, and we are adjusting Duberry's calculations to reflect this date.

8. Actually, he argues that there were 76 non-excludable days, but we have reduced the number by one because he filed his motion for continuance on January 18, 1990, rather than January 19, 1990, as he asserts in his brief. We also point out that his calculations treat as non-excludable the day the motion for the continuance was filed as well as the day the trial resumed on

March 21, 1990, when it was again continued because of the juror problem. We, however, reject these calculations for we exclude the days on which the events occurred in making the 70-day calculation. *See United States v. Mentz*, 840 F.2d 315, 327 (6th Cir.1988). Thus, for example, if a trial commences on the 70th day following a defendant's arraignment, counting the day following the arraignment as the first day, it is timely under the Speedy Trial Act. Therefore, even if we accepted Duberry's basic position, the non-excludable days in this case would be from and including December 8, 1989, and January 17, 1990, 41 days, and from and including February 17, 1990 and March 20, 1990, 32 days, for a total of 73 days.

ruption at the trial. 671 F.2d at 444. Similarly, in *United States v. Richmond,* 735 F.2d 208 (6th Cir.1984), the court of appeals found that the Act had not been violated when *voir dire* had been conducted within the 70–day period but trial was recessed for two weeks because the defendant's counsel had asked for time to prepare.

In this case even though neither defendant requested a delay beyond February 5, 1990, the delays which did occur do not support a finding that the district court intended to evade the spirit of the Act. On February 16, 1990, the evidentiary portion of the trial could not start until both defendants were available which was not until after 11:00. Inasmuch as the parties estimated that it would take about a day to complete the case, it was evident that it might not be over before Judge Cahn left the Virgin Islands. But to accommodate the defendants, Judge Cahn offered to start the evidentiary phase of the trial, if they would waive any double jeopardy claim resulting from a mistrial, should the trial not be completed before he left. It was only after the defendants declined to do this that Judge Cahn granted a continuance under 18 U.S.C. § 3161(h)(8)(A).[9]

■ The above recitation demonstrates that the district court did not evade the spirit of the Act by conducting *voir dire* within the 70–day time limit to stop the speedy trial clock and then allowing a prolonged delay until the presentation of evidence. Rather, the record shows that the court sought to have the trial go forward but its offer of accommodation was rejected. The delay, of course, was attributable to district court vacancies in the Virgin Islands, a circumstance causing problems in numerous cases.[10]

9. Of course, a judge could not have been substituted during the trial if Judge Cahn left prior to the verdict. *See* Fed.R.Crim.P. 25. While Duberry does not claim that the 5–day period from March 21 to March 26 should be included in the 70–day calculation, we point out that even during this period Judge Huyett unsuccessfully attempted to avoid delay by suggesting the use of an 11–person jury.

10. The seriousness of the situation is demonstratable from the opinion in *Government of*

We find cases in which courts have found a delay in a trial following *voir dire* unacceptable under the Act distinguishable. For example, in *Fox,* 788 F.2d 905, the trial judge delayed the evidentiary phase of trial 5½ months, but failed to put any justification for doing so in the record. In *United States v. Andrews,* 790 F.2d 803 (10th Cir. 1986), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 505 (1987), there was a 2½ month delay after *voir dire* caused by a heavy criminal docket, several legal holidays and the trial judge's attendance at a judicial conference, which he mistakenly believed was mandatory. In *Crane,* 776 F.2d 600, the court of appeals found an attempt to evade the spirit of the Act by a last-minute arrangement to have a magistrate begin *voir dire* on the final days of the 70–day period, when it was clear that the beginning of the trial would be delayed.

■ Duberry argues that the fact that the jury was not sworn immediately after the *voir dire* on February 5, 1990, is significant, as that time "controls the commencement of the trial for double jeopardy purposes," citing *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).[11] Brief at 12. He notes that Virgin Island law requires the jury to be sworn as soon as selected, though he acknowledges that there is often a two-week delay in this procedure. *See* V.I.Code Ann. tit. 5, § 3604 (1967). We need not linger on this point, as the cases already cited hold that a trial commences for Speedy Trial Act purposes at the time the *voir dire* begins. The rule could hardly be otherwise, as an extended *voir dire* could well cause significant delay. Thus, if the trial is deemed not to commence until the jury is sworn, more than 70 days may elapse after arraignment

*Virgin Islands v. Benjamin,* 736 F.Supp. 1337, 1345 n. 1 (D.V.I.1990), in which acting District of Virgin Islands Chief Judge Brotman from the District of New Jersey indicated that as of March 31, 1990, there were 1976 civil cases pending in the the District Court of the Virgin Islands with no resident judges.

11. We are not certain when the jury was sworn but it seems to have been either on March 26 or March 29, 1990.

even if the *voir dire* starts within the 70–day period. Furthermore, there is no reason why a trial must commence for Speedy Trial Act purposes when jeopardy attaches as the Speedy Trial Act and the Double Jeopardy Clause implicate entirely different interests.

■ Our result is not dependent on the circumstances that Judge Cahn granted a continuance on February 16, 1990, under the "ends of justice" provision of 18 U.S.C. § 3161(h)(8)(A), an action which Duberry challenges, as he suggests that the order was entered because of the "general congestion of the court's trial calendar," even though Judge Cahn was leaving the Virgin Islands. While we do not question the basis for the order as set forth by Judge Cahn, we are holding that the trial commenced on February 5, 1990, well within the 70–day period, and no days after that date are to be counted in the Speedy Trial Act computations. Thus, while it was prudent for Judge Cahn to enter the order of February 16, 1990, with the benefit of hindsight we conclude that it was not needed.[12]

Even if we agreed with Duberry's argument that we should otherwise calculate the speedy trial count as recommencing on February 16, 1990, there would be an additional period of excludable delay, so that March 21, 1990, when the trial resumed would be within the 70–day period. 18 U.S.C. § 3161(h)(1)(F) provides that a delay will be excluded from the 70–day period caused by the filing of *any* pretrial motion "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."

■ Duberry filed a motion for release from custody on February 28, 1990, for, as he explicated in his motion to dismiss by reason of the asserted Speedy Trial Act violation, he "became eligible for release from Golden Grove Adult Correctional Facility, having served a one-year sentence for simple possession of a controlled substance." App. at 454. He explained in his brief in the district court, in what seems to be quite remarkable, that he "was released on good time on February 22, 1990." The government filed a motion for detention on March 6, 1990, and the court granted the government's motion and denied Duberry's motion on March 8, 1990. App. at 4. Under 18 U.S.C. § 3161(h)(1)(F), there was an excludable delay of nine days from February 28, 1990, until and including March 8, 1990, due to these motions. Even accepting Duberry's argument that his trial otherwise began 75 days after the date of his arraignment, the exclusion of nine days would bring the commencement of trial to within 70 days as permitted by the Act.[13]

Duberry asserts that the motions for release and detention should not be considered the basis for an excludable delay under 18 U.S.C. § 3161(h)(1)(F) as neither is a "pretrial motion" contemplated by the Speedy Trial Act. Reply brief at 1–3. According to Duberry, motions for release or detention do not involve the kind of considerations implicated by pretrial motions for dismissal, disqualification of counsel, discovery, disclosure of alibi witnesses, suppression, and the like, as release and detention motions concern "considerations separate and apart from the trial of the case." *Id.* Further, Duberry points to the fact that the motion for release was heard by a magistrate and not a district judge as a reason not to exclude days from the 70–day count by reason of those motions. *Id.*

These arguments are unpersuasive. 18 U.S.C. § 3161(h)(1)(F) provides for excluda-

---

12. The district court denied the motion to dismiss under the Speedy Trial Act on two bases; that the trial commenced when the *voir dire* started and that Lockhart was not available on February 16, 1990, citing 18 U.S.C. § 3161(h)(7) on the latter point. We are deciding the case on the first of these bases and also predicate our result on an exclusion of nine days from the 70–day period by reason of the filing of release and detention motions as discussed below. Inasmuch as we reach our decision as a matter of law, we exercise plenary review. *United States*

*v. Rivera Construction Co.,* 863 F.2d 293, 295 n. 3 (3d Cir.1989).

13. The ruling on the motions was by a memorandum of March 8, 1990, but the order was not entered until March 9, 1990. It is not necessary for us to determine which date should be used for determining the date of disposition. If we used March 9, 1990, the exclusion would be ten days.

ble delay for *"any"* pretrial motion.[14] Although our research has revealed no case in this court which rejects the distinction Duberry raises, other courts have excluded time devoted to motions outside the class of what he calls "ordinary pretrial motions." Thus, in *United States v. Mentz,* 840 F.2d 315, 327 (6th Cir.1988), there was an exclusion under 18 U.S.C. § 3161(h)(1)(F) for a defendant's motion to permit his parents to visit him in jail. In *United States v. Wilson,* 835 F.2d 1440, 1442–43 (D.C.Cir.1987), the court held that the defendants' argument that motions not covered under Fed.R.Crim.P. 12(b)(2) cannot be the basis for exclusions under 18 U.S.C. § 3161(h)(1)(F) had "no statutory basis at all." In *Wilson,* the motions were for orders to modify pretrial release conditions and to permit a tape recorder in the cell block. *See also United States v. Severdija,* 723 F.2d 791 (11th Cir.1984) (excluding time in which motion to reduce bond was pending); *United States v. Savoca,* 739 F.2d 220, 223 (6th Cir.1984) (same), *vac'd on other grounds,* 761 F.2d 292 (6th Cir.), *cert. denied,* 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985).

As noted by the Court of Appeals for the Second Circuit in *United States v. Cobb,* 697 F.2d 38, 42 (2d Cir.1982), "Congress could have attacked the many problems raised by the different varieties of pretrial motions and given separate consideration to them. Wisely, it avoided such a morass and extended the exclusion to 'any pretrial motion,' without distinguishing among them." One court has stated that a motion can be *"tangential to the issue of guilt* and still trigger" an exclusion under 18 U.S.C. § 3161(h)(1)(F). *United States v. Feldman,* 788 F.2d 544, 547 n. 1 (9th Cir. 1986) (emphasis supplied). As the Supreme Court has observed, Congress in providing for exclusion for criminal motion practice used the phrase "any pretrial motion." *See Henderson v. United States,* 476 U.S. 321, 326, 106 S.Ct. 1871, 1875, 90 L.Ed.2d 299 (1986) (refusing to read a reasonable-

ness requirement into the delay period described in 18 U.S.C. § 3161(h)(a)(F)).

■ In view of the foregoing analysis, we reject Duberry's argument that the motions for release and detention should be treated differently for Speedy Trial Act calculations than any other pretrial motion. Furthermore, the fact that the motions were considered by a magistrate rather than a district court judge makes no difference for the delay is caused by the filing of the motion without regard for the position of the judicial officer ruling on it. *See United States v. Garcia,* 778 F.2d 1558 (11th Cir.), *cert. denied,* 477 U.S. 906, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986) (where a magistrate ruled on certain pretrial motions, the time between the filing of the motions and the magistrate's ruling on them was excludable).

■ Separate from, but related to his Speedy Trial Act contentions, Duberry asserts that his Sixth Amendment right to a speedy trial was violated, citing *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Under *Barker,* we consider in determining whether a defendant has been deprived of his Sixth Amendment right to a speedy trial, the length and reason for the delay, whether the defendant has asserted his right to a speedy trial, and the prejudice from the delay. We reject the Sixth Amendment claim, as the delay was short and was not due to any deliberate attempt by the government or the court to delay the trial or hamper the defense. Indeed, we can find no reason in the record to conclude that the delay prejudiced Duberry's defense and he does not claim it did. Furthermore, the short additional period of incarceration after his prior sentence expired could not be the basis for relief. *Id.* at 534, 92 S.Ct. at 2194.

We reject without discussion three additional contentions which Duberry makes, as we have concluded that all are clearly without merit: (1) he should be acquitted of the charge of kidnapping with intent to commit robbery as he did not commit that offense;

---

**14.** Fed.R.Crim.P. 12(b)(2) states that "[a]ny defense, objection or *request* which is capable of determination without the trial of the general issue may be raised before trial by motion." [Emphasis added.] The motions for release and detention meet this definition.

(2) testimony from agent Brann, one of the officers involved in the pursuit, regarding Duberry's prior conviction should have been excluded under Fed.R.Evid. 403 and 609; and (3) he should not have been sentenced consecutively for first degree robbery, as he was also convicted and sentenced for kidnapping with intent to commit robbery.

The judgment of conviction and sentence of June 13, 1990, will be affirmed.